# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**JASON GOULDING**,
Individually,

> Plaintiff,

v.                                                    Case No. 8:25-cv-02608-WFJ-CPT

**TWIN MED, LLC,**
a Delaware LLC,

> Defendant.

_____/

## ORDER

Before the Court is Defendant Twin Med, LLC's ("Twin Med" or "Defendant") Motion to Compel Arbitration and Stay Further Proceedings. Dkt. 12. Plaintiff Jason Goulding ("Plaintiff") has responded in opposition, Dkt. 15, Defendant filed a reply, Dkt. 18, and Plaintiff filed a surreply with the Court's permission. Dkt. 21. Upon careful consideration, the Court denies Defendant's motion to compel arbitration.

## BACKGROUND

This dispute centers around Plaintiff's unpaid commissions. Defendant Twin Med, LLC ("Twin Med") is a national distributor of medical supplies and equipment to health care providers across the country. Dkt. 12 at 1. Plaintiff Jason Goulding was an employee of Twin Med beginning in 2010. Dkt. 1-5 ¶ 5.

## I.    2010 Alternative Despite Resolution Policy

On July 21, 2010, Plaintiff executed an "Agreement to be Bound by Alternative Dispute Resolution Policy" (the "2010 Arbitration Agreement") in which Plaintiff agreed to be bound by Defendant Twin Med's alternative dispute resolution policy. *See* Dkt. 12-1 at 5–8. The 2010 Arbitration Agreement clearly provided that final and binding arbitration is the exclusive means of resolving the "covered disputes." *Id.* at 5 ("The ADR Policy will be mandatory for ALL EMPLOYEES. Any disputes which arise and which are covered by the ADR Policy must be submitted to final and binding resolution through the procedures of the Company's ADR Policy."). The signed 2010 Arbitration Agreement specifies that "[t]his ADR Program is understood to apply to all disputes relating to termination of employment, unlawful discrimination, alleged sexual harassment or other unlawful harassment, as defined in the ADR Program materials." *Id.* at 8.

## II.    The 2011 Employment Agreement

In 2011, Plaintiff was promoted to Vice President of National Accounts at Twin Med and, on May 29, 2011, the parties executed an employment agreement (the "2011 Employment Agreement"). Dkt. 1-5 ¶ 6; *id.* at 17–25; Dkt. 12-1 at 10–18. Notably, the 2011 Employment Agreement contains no arbitration provision and specifies the parties' irrevocable and unconditional agreement that the exclusive

forum for "any legal action or proceeding relating to this Agreement" is one of two

specified judicial forums, including this Court:

> 6.8 Jurisdiction, Jury Trial Waiver, Etc. EACH PARTY HEREBY IRREVOCABLY AND UNCONDITIONALLY:
>
> (a) SUBMITS FOR ITSELF OR HIMSELF IN ANY LEGAL ACTION OR PROCEEDING RELATING TO THIS AGREEMENT, OR FOR RECOGNITION AND ENFORCEMENT OF ANY JUDGMENT IN RESPECT THEREOF, TO THE EXCLUSIVE JURISDICTION OF THE COURTS OF THE SIXTH JUDICIAL CIRCUIT IN AND FOR PINELLAS COUNTY, STATE OF FLORIDA, THE COURTS OF THE UNITED STATES OF AMERICA FOR THE MIDDLE DISTRICT OF FLORIDA, TAMPA DIVISION, AND APPELLATE COURTS FROM ANY THEREOF;
>
> (b) CONSENTS THAT ANY SUCH ACTION OR PROCEEDING MAY BE BROUGHT IN SUCH COURTS AND WAIVES ANY OBJECTION THAT IT OR HE MAY NOW OR HEREAFTER HAVE TO THE VENUE OF ANY SUCH ACTION OR PROCEEDING IN ANY SUCH COURT OR THAT SUCH ACTION OR PROCEEDING WAS BROUGHT IN AN INCONVENIENT COURT AND AGREES NOT TO PLEAD OR CLAIM THE SAME; . . .
>
> (e) TO THE EXTENT PERMITTED BY LAW, WAIVES TRIAL BY JURY IN ANY LEGAL ACTION OR PROCEEDING RELATING TO THIS AGREEMENT OR ANY OTHER TRANSACTION DOCUMENT AND FOR ANY COUNTERCLAIM THEREIN.

Dkt. 1-5 at 23. The 2011 Employment Agreement also contained a "merger" clause,

stating that:

> 6.4 Entire Agreement. etc. This Agreement of the Company set forth the entire agreement between the parties with respect to the subject matter hereof, and supersede[s] any and all prior agreements between the Company and the Employee, whether written or oral, relating to the Employee's employment and any or all other matters covered by and contained or otherwise dealt with in this Agreement of the Company.

3

> No modification, change or amendment of this Agreement or any of its provisions shall be valid unless in writing and signed by the party against whom such claimed modification, change or amendment is sought to be enforced.

*Id.* at 24.

### III.    2014 Commission Agreement

On March 17, 2014, the parties executed a commission agreement (the "Commission Agreement") that memorialized mutually agreed changes to certain terms of the 2011 Employment Agreement, including the method for calculating Plaintiff's earned commissions. Dkt. 1-5 ¶ 11; *id.* at 27–30. The Commission Agreement contains only a limited integration clause specifically addressing Plaintiff's status as an at-will employee. *Id.* at 28 ("This represents an integrated agreement with respect to the at-will nature of the employment relationship."). It also provides that his at-will status may be modified only by a written agreement signed by the CEO of Twin Med. *Id.* Additionally, the Commission Agreement contains no confidentiality provision, post-employment restrictive covenants, severance pay provision, or arbitration clause. *See id.* at 27–30.

### IV.    2018 Employment Agreement

In December 2017, Defendant began withholding a portion of Plaintiff's monthly commission payments. Dkt. 1-5 ¶¶ 13, 15. A principal of Twin Med had approached Plaintiff about deferring payment of a portion of his commissions until the "sale" of the company. *Id.* ¶ 13. Plaintiff was advised that Defendant would pay

4

25% interest annually on the accrued balance of the withheld commissions if he agreed. *Id.* Plaintiff indicated he would consider such an arrangement, provided the deferral period was limited to five years, and the deferral immediately terminated in the event of his separation from Defendant for any reason. *Id.* ¶ 14.

On December 31, 2017, Defendant emailed a proposed employment agreement to Plaintiff (the "2018 Employment Agreement"). *Id.* ¶ 16. The terms of the 2018 Employment agreement did not match the terms previously described to Plaintiff. *Id.* Plaintiff immediately contacted the principal who proposed the deferral, but the principal did not respond. *Id.* From December 31, 2017, to May 25, 2023, Plaintiff reached out via multiple telephone calls, emails, and text messages to Defendant's CEO, and later Defendant's Chief Financial Officer, David Klarner, seeking a resolution to the commission deferral. *Id.* ¶¶ 19–33. The parties did not execute the 2018 Employment Agreement. *See id.* at 33–45.

The unsigned 2018 Employment Agreement contained the following arbitration provision:

> 15. <u>Arbitration</u>. Employee and the Company mutually agree that any and all existing or future disputes, claims or controversies arising out of or relating to this Agreement, Employee's employment, the termination thereof, or otherwise arising between Employee and the Company shall, in lieu of a jury or other civil trial, be settled by final and binding arbitration in accordance with the Federal Arbitration Act. This agreement to arbitrate includes all claims whether arising in tort or contract and whether arising under statute or common law. For avoidance of doubt, this agreement to arbitrate shall include all claims or controversies that may have already arisen between Employee and

5

the Company. Employee and the Company also agree to submit claims to the arbitrator regarding issues of arbitrability, the validity, scope, and enforceability of this agreement to arbitrate or this Agreement, his or her jurisdiction, as well as any gateway, threshold, or any other challenges to this agreement to arbitrate, including claims that this agreement to arbitrate or this Agreement is unconscionable. The arbitration shall be administered by JAMS, pursuant to the JAMS Employment Arbitration Rules & Procedures ("Rules") in effect at the time of arbitration (see http://www.jamsadr.com/rules-employment-arbitration/). In the event that any term or provision of the Rules conflicts with any term or provision of this agreement to arbitrate, the term or provision of this agreement to arbitrate shall prevail. Judgment on any award rendered by the arbitrator may be entered and enforced by any court having jurisdiction thereof. Employee shall not be required to pay any type or amount of expense relating to the arbitration if such requirement would invalidate this agreement to arbitrate or would otherwise be contrary to the law as it exists at the time of the arbitration. The prevailing party in any arbitration shall be entitled to recover its reasonable attorney's fees and costs, where authorized by contract or statute.

*Id.* at 42–44.

In February 2024, Defendant abruptly ceased withholding any portion of Plaintiff's monthly commissions and instead paid commissions in full. *Id.* ¶ 34. On January 7, 2025, Plaintiff began receiving multiple emails from Defendant's human resources department requesting that he sign a new confidentiality agreement and an arbitration agreement, supposedly because the company was "cleaning up files." *Id.* ¶ 35. Three days later, on January 10, 2025, Defendant terminated Plaintiff's employment without Plaintiff signing either the new confidentiality agreement or the arbitration agreement. *Id.* ¶ 36; *see id.* at 50–52.

The termination letter sent to Plaintiff states that he is bound by the confidentiality and non-solicitation provisions in his 2011 Employment Agreement and by the 2010 Arbitration Agreement. *Id.* at 51 ("Please note that the Confidentiality and Non-Solicitation Agreement that you signed on **5/29/2011** and the Agreement to be Bound by Alternative Dispute Resolution Policy that you signed on **7/21/2010** will remain in effect after your employment ends, regardless of whether you sign this Release."). The termination letter does not reference the unsigned 2018 Employment Agreement. *See id.* at 50–52.

Defendant also proposed a post-termination severance agreement with Plaintiff, offering to pay him $76,277.35 in return for a full release of all claims he has against the company. *Id.* ¶ 37. Plaintiff refused this severance proposal. *Id.* Defendant paid Goulding his severance in accordance with the 2011 Employment Agreement, but refused to pay Plaintiff's accrued commissions. *Id.* ¶ 38. Plaintiff claims that Defendant is in possession, at the time it terminated Plaintiff's employment, of $1,711,439.35 in unpaid commissions, excluding accrued interest. *Id.* ¶ 39. When Plaintiff demanded payment of his accrued commissions, Defendant refused, advising Plaintiff that the commissions were not yet payable. *Id.* ¶ 40.

On August 14, 2025, Plaintiff filed a six-count complaint in the Sixth Judicial Circuit in and for Pinellas County, Florida, alleging the following causes of action: (1) Action for Declaratory Relief; (2) Breach of the 2011 Employment Contract; (3)

7

Breach of Duty of Good Faith and Fair Dealing; (4) Action for Civil Theft, (5) Action for Conversion; and (6) Promissory Estoppel. *See generally* Dkt. 1-5. On September 25, 2025, Defendant removed the case to federal court. Dkt. 1. On October 9, 2025, Defendant filed the instant motion to compel arbitration and stay the case. Dkt. 12.

## LEGAL STANDARD

"Federal law establishes the enforceability of arbitration agreements, while state law governs the interpretation and formation of [arbitration] agreements." *Emps. Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1322 (11th Cir. 2001). Under the Federal Arbitration Act ("FAA"), arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Further, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983); *see also Milestone v. Citrus Specialty Grp., Inc.*, No. 8:19-cv-2341-T-02JSS, 2019 WL 5887179, at *1 (M.D. Fla. Nov. 12, 2019) (stating that "[a] strong policy exists in favor of resolving disputes by arbitration").

The Court considers the following factors in determining whether to compel arbitration: "1) whether a valid written agreement to arbitrate exists; 2) whether an arbitrable issue exists; and 3) whether the right to arbitrate has been waived." *Williams v. Eddie Acardi Motor Co.*, No. 3:07-cv-782-J-32JRK, 2008 WL 686222, at *4 (M.D. Fla. Mar. 10, 2008) (citations omitted). "[T]he Court may consider matters outside of the four corners of the complaint" in ruling on these issues. *KWEST Commc'ns, Inc. v. United Cellular Wireless Inc.*, No. 16-20242-CIV, 2016 WL 10859787, at *5 (S.D. Fla. Apr. 7, 2016), *report and recommendation adopted*, No. 16-20242-CIV, 2016 WL 10870449 (S.D. Fla. June 28, 2016). And when deciding whether the parties have agreed to arbitrate certain matters, the Court generally applies "ordinary state-law principles that govern the formation of contracts." *Am. Express Fin. Advisors, Inc. v. Makarewicz*, 122 F.3d 936, 940 (11th Cir. 1997) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

"Once a party moves to compel arbitration, 9 U.S.C. § 4 provides the governing procedure." *Lamonaco v. Experian Info. Sols., Inc.*, 141 F.4th 1343, 1347 (11th Cir. 2025). "If the existence of the agreement is not genuinely disputed, the court must compel arbitration." *Id.* (citing 9 U.S.C. § 4). "But if the opposing party raises a genuine dispute of material fact as to contract formation, the court must hold a summary trial." *Id.* A district court may also "conclude as a matter of law that parties did or did not enter into an arbitration agreement" if "'there is no genuine

dispute as to any material fact' concerning the formation of such an agreement." *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016) (quoting Fed. R. Civ. P. 56(a)).

## DISCUSSION

As an initial matter, the parties do not dispute that an arbitrable issue exists and that waiver is inapplicable. *See generally* Dkts. 12, 15. Instead, the heart of this dispute is whether a valid written agreement to arbitrate even exists, given the 2010 Arbitration Agreement, the signed 2011 Employment Agreements, and the unsigned 2018 Employment Agreement.

Defendant argues that the 2010 Arbitration Agreement and the 2018 Employment Agreement were both offered by Defendant and accepted by Plaintiff. Dkt. 12 at 7. Plaintiff disagrees, arguing that the 2010 Arbitration Agreement "was superseded by and merged into the 2011 Employment Agreement" and that Plaintiff never accepted the unsigned 2018 Employment Agreement. Dkt. 15 at 4, 9, 15. Accordingly, the Court must determine which agreements exist and are binding on the parties.

## I.    Existence of a Written Agreement to Arbitrate

"[A]rbitration is a matter of contract, and the FAA does not allow a court to compel arbitration unless it is satisfied that the parties agreed to arbitrate." *Lamonaco*, 141 F.4th at 1346 (citing *Coinbase, Inc. v. Suski*, 602 U.S. 143, 147–49

(2024)). "Before referring a dispute to an arbitrator, therefore, the court determines whether a valid arbitration agreement exists." *Id.* (quoting *Coinbase*, 602 U.S. at 149). Florida law applies in this case. *see Emps. Ins. of Wausau*, 251 F.3d at 1322 ("[S]tate law governs the interpretation and formation of [arbitration] agreements.").

Applying Florida law, "[t]o prove the existence of a contract, a plaintiff must plead: (1) offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms." *Vega v. T-Mobile USA, Inc.,* 564 F.3d 1256, 1272 (11th Cir. 2009) (citing *St. Joe Corp. v. McIver,* 875 So. 2d 375, 381 (Fla. 2004)). Mutual assent is a prerequisite for the formation of any contract. *See Gibson v. Courtois,* 539 So. 2d 459, 460 (Fla. 1989) ("Mutual assent is an absolute condition precedent to the formation of the contract.").

Additionally, whether a superseding agreement renders a prior arbitration agreement ineffective bears on whether an enforceable arbitration agreement exists. *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1122 (11th Cir. 2014). The Court must first determine the existence of the agreement before it can compel arbitration. *See id.* (holding that the "threshold determination of whether a subsequent agreement entirely superseded a prior agreement is made under state law, without applying the FAA's presumption [in favor of arbitrability]").

Here, for purposes of resolving the instant motion to compel arbitration, the Court finds that the unsigned 2018 Employment Agreement is not an existing and

binding agreement between the parties. While there may be times when "[a] contract may be binding on a party despite the absence of a party's signature," *Integrated Health Servs. of Green Briar, Inc. v. Lopez-Silvero*, 827 So. 2d 338, 339 (Fla. 3d DCA 2002) (citation omitted), "the acts or conduct of the parties" show that there was no "mutuality or assent" to the 2018 Employment Agreement. *Id.* For almost six years, Plaintiff never signed the new employment agreement and contacted Defendant via multiple telephone calls, emails, and text messages to discuss the deferral of his commissions. Dkt. 1-5 ¶¶ 17–33; Dkt. 14 ¶¶ 7–25; Dkts. 14-1, 14-2, 14-3. The record shows that Goulding's "words and acts, judged by a reasonable standard," did not "manifest an intention to agree" to the 2018 Employment Agreement. *Dye v. Tamko Bldg. Prods., Inc.*, 908 F.3d 675, 680 (11th Cir. 2018) (citation modified) (quoting *Kolodziej v. Mason*, 774 F.3d 736, 741–42 (11th Cir. 2014)).

As to Defendant, there is evidence that it may have withdrawn or terminated its offer at some point, as its termination letter to Plaintiff explicitly reminds Goulding that he is contractually bound by the signed 2011 Employment Agreement and the signed 2010 Arbitration Agreement, not the unsigned 2018 Employment Agreement. Dkt. 1-5 at 51. Nor does Defendant invoke or reference the arbitration provision in the 2018 Employment Agreement when Twin Med demanded Plaintiff "withdraw" his Complaint and submit his claims to arbitration. *See* Dkt. 12-1 at 39–

41. Instead, Defendant relies on the 2010 Arbitration Agreement as the legal basis for compelling arbitration. *Id.* (showing emails between the parties requesting Plaintiff withdraw his Complaint and proceed to arbitration based on the signed 2010 Arbitration Agreement). Therefore, for purposes of resolving the instant motion, the 2011 Employment Agreement and the 2010 Arbitration Agreement are the operative contracts at issue, not the 2018 Employment Agreement.

Next, the Court considers whether the 2010 Arbitration Agreement compels arbitration in this case. Neither party disputes that the signed 2010 Arbitration Agreement and the 2011 Employment Agreement were validly executed contracts under Florida law. *See* Dkt. 12 at 3; Dkt. 15 at 5. Instead, Plaintiff argues that the 2010 Arbitration Agreement was superseded by the 2011 Employment Agreement, as evidenced by the 2011 Employment Agreement's merger clause. Dkt. 15 at 15. Because the 2011 Employment Agreement supersedes prior agreements and does not reference arbitration, Plaintiffs contend that there is no enforceable arbitration agreement between the parties. *Id.* ("Any preexisting arbitration obligation merged into Section 6.8 of the 2011 Employment Agreement.").

In Florida, the "well established rule of law is that a contract may be discharged or extinguished by merger into a later contract entered into between the parties in respect to the same subject which replaces the original contract." *Aly Handbags, Inc. v. Rosenfeld*, 334 So. 2d 124, 126 (Fla. 3d DCA 1976); *see also St.*

*Joe Corp.*, 875 So. 2d at 381 ("It is well established that the parties to a contract can discharge or modify the contract, however made or evidenced, through a subsequent agreement."). Indeed, a merger clause is "[a] contractual provision stating that the contract represents the parties' complete and final agreement and supersedes all informal understandings and oral agreements relating to the subject matter of the contract." *Jenkins v. Eckerd Corp.*, 913 So. 2d 43, 53 n.1 (Fla. 1st DCA 2005) (quoting Black's Law Dictionary, 813 (7th ed. 1999)); *see Garcia v. Harmony Healthcare, LLC*, No. 8:20-CV-1065-WFJ-AAS, 2021 WL 1610093, at *4 (M.D. Fla. Apr. 26, 2021) (citing Restatement (Second) of Contracts § 213 (1981)) ("A final integrated agreement discharges prior agreements that fall within the scope of the final agreement's subject matter or are inconsistent with its terms.").

Generally, the primary purpose of a merger clause is to prevent the introduction of parol evidence—i.e., evidence of prior contemporaneous agreements between the parties—that may contradict the written terms of the final agreement. *See Jenkins*, 913 So. 2d at 53; *Sugar v. Estate of Stern*, 201 So. 3d 103, 108 n.6 (Fla. 3d DCA 2015) ("The common way to bar the attempted resurrection of alleged representations during settlement negotiations is the use of a merger/integration provision in a written settlement agreement."). As such, a merger clause evidences the parties' intent that a written contract constitutes the final and complete

agreement. *See Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1309 (11th Cir. 1998).

Here, the contents of the two agreements clearly pertain to the same subject matter—i.e., Plaintiff's employment relationship with Defendant. As its title suggests, the 2011 "Employment Agreement" concerns the substantive terms and conditions of the parties' employment relationship. Dkt. 1-5 at 17 ("[T]he Company desires to secure the professional services of the Employee in connection with the operation of the Company and to enter into an agreement embodying the terms of such employment; and . . . the Employee desires to enter into such agreement and to provide such services to the Company upon the following terms and conditions."). These terms include certain covenants and obligations that Plaintiff agreed to comply with, including confidentiality and non-solicitation provisions. *Id.* at 19–20. The 2011 Employment Agreement also provides that Defendant may seek available remedies for a breach of the listed covenants and obligations, including injunctive relief in two designated legal forums. *Id.* at 21, 23 (emphasizing that "each party hereby irrevocably and unconditionally" submits to "the exclusive jurisdiction" of the Sixth Judicial Circuit in and for Pinellas County, Florida, and the US District Court for the Middle District of Florida, Tampa Division).

Similarly, the 2010 Arbitration Agreement sets forth the dispute-resolution policy applicable to legal disputes arising out of the parties' employment

relationship, but instead of designating specific courts as the forum, it mandates arbitration as the medium for resolving such disputes. *See* Dkt. 12-1 at 5 ("Twin Med . . . has developed and implemented this Alternative Dispute Resolution Policy. . . . We believe that these procedures will result in a fair and equitable means for resolving those types of employment disputes that all too often become unnecessarily protracted. . . . The ADR Policy will be mandatory for ALL EMPLOYEES. . . . For employees covered by this Alternative Dispute Resolution Policy, alternative dispute resolution, including final and binding arbitration, is the exclusive means for resolving covered disputes[.]"). Thus, while the 2011 Employment Agreement covers a broader subject matter, the text of the agreement makes clear there is substantial overlap with the 2010 Arbitration Agreement, as both agreements address the forum and means of resolving legal disputes in the employment relationship.

Turning to the merger clause, the Eleventh Circuit has instructed that "[w]hen, under state law, parties agree to supersede an old contract by forming a new one, basic contract principles require [the court] to look only to the new agreement for evidence of the parties' intent." *Dasher*, 745 F.3d at 1113. Chief among the indicia of the parties' intent to supersede is the presence of a merger or integration clause in the new agreement. *See Jenkins*, 913 So. 2d at 53 (holding that an integration clause is "a highly persuasive statement that the parties intended the agreement to be totally

integrated"). Even if the superseding agreement is silent on arbitration, an arbitration clause in a prior agreement may still be rendered ineffective. *Dasher*, 745 F.3d at 1122.

Here, the all-encompassing language in the superseding agreement is clear. Based on a plain reading of the merger clause terms, the 2011 Employment Agreement was intended to supersede the 2010 Arbitration Agreement, which was a prior written agreement between the parties. Indeed, it emphasizes that the 2011 Employment Agreement represents "the *entire agreement between the parties* with respect to the subject matter hereof, and *supersede any and all prior agreements* between the Company and the Employee, whether written or oral, *relating to the Employee's employment* and any or all other matters covered by and contained or otherwise dealt with in this Agreement of the Company." Dkt. 1-5 at 23 (emphasis added).

The Court is hard pressed to think of a clearer and more unequivocal statement that the 2011 Employment Agreement replaced every agreement the parties might have made prior to executing the 2011 Employment Agreement. The plain meaning of the phrase "any and all" indicates that the drafters of the 2011 Employment Agreement were referring to the entirety of the parties' agreements, "written or oral," that were made before the 2011 Employment Agreement. Dkt. 1-5 at 23; *see Smart Communications Holding, Inc. v. Correct Sols., LLC*, No. 8:20-CV-1469-JLB-JSS,

2023 WL 5003169, at *9 (M.D. Fla. Aug. 4, 2023) (finding "[t]his Agreement supersedes any and all other agreements made between the Parties, written, oral or otherwise" is "clear and unequivocal" language that the later agreement replaced prior agreements); *Centennial Bank v. ServisFirst Bank Inc.*, No. 8:16-cv-88-CEH-CPT, 2022 WL 10219893, at *8 (M.D. Fla. Oct. 10, 2022) (finding that the prior agreement was "extinguished by merger" into the second agreement where "the two agreements concerned the same subjects, and the second agreement made clear that it reflected the 'entire understanding between the parties on those topics'"). Therefore, the Court finds that there is no genuine dispute that the parties intended to supersede the 2010 Arbitration Agreement when entering into the 2011 Employment Agreement.

Defendant, however, argues that "the Court is not authorized to make such determinations" concerning whether "the 2010 Arbitration Agreement was terminated by the execution of the Employment Agreement in 2011." Dkt. 12 at 8. Instead, "the question of its termination is for the arbitrators, not the trial court." *Id.* (citing *Estate of Blanchard ex rel. Blanchard v. Cent. Park Lodges (Tarpon Springs), Inc.*, 805 So. 2d 6, 8 (Fla. 2d DCA 2001)); *see* Dkt. 18 at 4. The Court disagrees, as Defendant overlooks the difference between the validity of an arbitration agreement and the existence of a valid agreement in the first place.

The Eleventh Circuit has already clarified that "courts must determine whether the parties formed a contract containing an arbitration clause before compelling arbitration and that this inquiry speaks to the existence of the contract." *Reiterman v. Abid*, 26 F.4th 1226, 1232 (11th Cir. 2022) (citing *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296–97 (2010)). As relevant to this case, a subsequent mutual rescission is an agreement between the parties not to be bound by their former contract any longer. *Id.* If the former contract contained an arbitration provision, the parties may voluntarily release each other from their obligations, including arbitration. *Id.* (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) and *Henderson v. Coral Springs Nissan*, 757 So. 2d 577, 578 (Fla. 4th DCA 2000)). As such, "[a]ny disputes about whether the parties later agreed to rescind their earlier contract are disputes about whether a new agreement was formed—and courts decide contract formation disputes, not arbitrators." *Id.* (citing *Granite Rock*, 561 U.S. at 296–97).

Here, whether the formation of the 2011 Employment Agreement constituted mutual rescission of the 2010 Arbitration Agreement is precisely the type of dispute appropriately before a court. In other words, the Court's prior discussion of whether the 2011 merger provision rescinded the parties' 2010 Arbitration Agreement is a contract-formation issue that only this Court, not an arbitrator, can decide. *See id.* at 1233 ("[T]he existence of the earlier contract is called into doubt, not its validity.

Accordingly, the matter is for the District Court to decide before compelling arbitration."); *Dasher*, 745 F.3d at 1120. Because the 2010 Arbitration Agreement was entirely superseded and the 2011 Employment Agreement is silent on arbitration and contemplates lawsuit forums, Defendant's motion to compel arbitration is due to be denied. *See Dasher*, 745 F.3d at 1122 ("[A]n entirely superseding agreement renders a prior agreement's arbitration clause ineffective, even if the superseding agreement is silent on arbitration.").

**CONCLUSION**

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that:

1. Defendant Twin Med's Motion to Compel Arbitration and Stay of Litigation, Dkt. 12, is **DENIED**.

2. Defendant Twin Med must file a responsive pleading within **FOURTEEN (14) days** of the entry of this Order.

    **DONE AND ORDERED** at Tampa, Florida, on December 15, 2025.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record